IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMY L. GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-20-407-RAW-SPS |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Amy L. Graham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 41). She completed high school and has previously worked as a medical assistant (Tr. 21, 276). The claimant alleges inability to work since August 15, 2018, due to blindness/low vision, Addison's disease, fibromyalgia, depression, migraines, and thyroid failure (Tr. 276).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 15, 2018. Her applications were denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 3, 2020 (Tr. 10-23). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found at step four that the claimant could perform sedentary work as defined in 20 C.F.R.

§§ 404.1567(a) and 416.967(a), meaning here that she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand/walk up to three hours in an eight-hour workday, and sit six hours in an eight-hour workday. Additionally, she determined the claimant could only occasionally climb ramps/stairs, stoop, kneel, crouch, or crawl, and that her job should not involve climbing ladders, ropes or scaffolds. Finally, she found that the claimant was able to perform simple one- to two-step tasks with routine supervision, that she could frequently interact with supervisors and coworkers and occasionally with the public, and that she was able to adapt to a work environment, including maintaining attention and concentration for up to two hours at a time while performing simple one- to two-step tasks throughout an ordinary workday and workweek (Tr. 15-16). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, optical goods assembler, table worker, and circuit board assembly (Tr. 21-23).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate two medical source opinions, (ii) failing to determine she had additional severe impairments, and (iii) improperly identifying jobs at step five that she could perform. The undersigned Magistrate Judge agrees with the claimant's first contention, and the case should be remanded.

The ALJ found the claimant had the severe impairments of fibromyalgia, autoimmune polyglandular syndrome type 2 with Addison's disease, depressive disorder, thyroid disorder, and migraines, as well as the nonsevere impairments of osteopenia,

hyperlipidemia, obstructive sleep apnea, and chronic kidney disease (Tr. 12-13). The relevant medical evidence reveals that as far back as 2016 the claimant had diagnoses including autoimmune polyglandular syndrome type 2 related to Addison's disease, hyperlipidemia, osteopenia, and migraine headaches (Tr. 362). In September 2018, one month after the alleged onset date, hospital records reflect the claimant had worsening hypothyroidism, migraines, and depression (Tr. 433). In April 2019, the claimant presented to the hospital for treatment of persistent shortness of breath with nausea, vomiting, and diarrhea (Tr. 482). On May 20, 2019, the claimant presented to her treating physician, Dr. Geoffrey Plumlee, with, *inter alia*, nausea and headaches (Tr. 521). As to her Addison's disease, he noted that the claimant was dizzy with recurrent flareups and fatigue, stating she was unable to work and this this appeared permanent (Tr. 522). In June 2019 she was hospitalized for three days for an adrenal insufficiency, viral gastroenteritis, a UTI, hyponatremia, and hyperkalemia (Tr. 494). She complained of nausea, vomiting, and diarrhea for one week prior to admission (Tr. 494).

On December 4, 2018, the claimant presented to Dr. Michael Hitsman, D.O., for a consultative physical examination (Tr. 439-445). He found the claimant was positive for shortness of breath, numbness, chronic pain, and fatigue, but the examination was otherwise normal (Tr. 440). He assessed her with fibromyalgia, depression, migraines, hypothyroidism, and Addison's disease (Tr. 440). As to her fibromyalgia, the ALJ noted she had 12/18 positive trigger points, but that she did not appear to be severely tender (Tr. 445). He also noted lumbar and paraspinal tenderness (Tr. 444).

On January 13, 2019, Dr. Timothy Doty, Psy.D., performed a consultative mental status examination of the claimant (Tr. 449-453).  In a brief notation, Dr. Doty indicated as to depersonalization that the claimant "sometimes has the thought 'my thumbs shouldn't be there'" (Tr. 450).  In summary, he found that the claimant's ability to engage in work-related activities was low/poor at the present, and that her ability to understand work-related mental tasks appeared moderately intact (Tr. 451).  Although her memory performance was good, he further noted that her ability to sustain concentration and persist appeared poor (Tr. 451).  Dr. Doty also found that the claimant's ability to socially interact and adapt to the demands of a work situation appeared moderate but would be reduced by low energy and drive (Tr. 451).  He did find she could manage her own benefits (Tr. 451).

On November 28, 2019, Dr. Plumlee complete both a mental and physical evaluation of the claimant's ability to perform work.  As to her mental impairments, he indicated she had moderate limitations with regard to both simple and complex instructions, but no limitations in interacting with coworkers, supervisors, and the public (Tr. 531-532).  As to her physical impairments, he found she could never lift/carry any weight, citing her dizziness, being a fall risk in light of uncontrolled Addison's disease, and because her sodium levels can abruptly change due to stress or randomly (Tr. 534).  He indicated she could sit/stand/walk one hour each total in an eight-hour workday, due to chronic pain, and again citing her dizzy spells and being a fall risk (Tr. 535).  He noted labs had confirmed her Addison's disease and fibromyalgia and that she was on medications, but that she still had breakthrough symptoms (Tr. 535).  He indicated she was limited in grasping and foot controls due to hand and foot cramping, and indicated she needed a

-6-

railing for any stairs because she is a fall risk (Tr. 536-537). He checked boxes that she could only occasionally, stoop, kneel, crouch, and crawl (Tr. 537). Additionally, he noted she was hospitalized every few months, and that she had adrenal failure which during random or stressful situations could cause her blood pressure and sodium to drop and be life threatening (Tr. 537). As to environmental limitations, he checked boxes in that section but also stated that she was a fall risk, could only occasionally drive and that she needed to avoid extremes and stress due to adrenal failure (Tr. 538).

State agency physicians determined that the claimant could perform light work with no additional limitations (Tr. 109-111, 143-144). As to her mental impairments, state reviewing physicians found initially and upon review that she could perform simple tasks of one to two steps with routine supervision, that she could interact appropriately with coworkers and supervisors and occasionally with the public, and that she is able to adapt to a work setting and some changes in work settings (Tr. 112, 146).

In her written opinion at step four, the ALJ summarized the claimant's testimony as well as most of the medical evidence in the record, including the records from Dr. Plumlee, Dr. Hitsman, and Dr. Doty. As to Dr. Plumlee's physical RFC opinion, the ALJ found that his opinions were not supported by the record or consistent with it, because the claimant had a full range of motion, normal gait, and full grip strength in exam notes (Tr. 20). As to Dr. Doty's consultative opinion, the ALJ found his opinion unpersuasive because he used terms such as "moderate" and "poor," but did not define them, then stated in the *next* sentence, "testing and her overall medical record support more **moderate** limitations in regards to concentration" (Tr. 20). He found Dr. Doty's statement that the claimant could

manage funds to be persuasive. The ALJ purported to consistently credit the claimant's reports of fatigue associated with her medical conditions multiple times in her opinion (Tr. 20), but does not clarify how that is reflected in the RFC. The ALJ ultimately concluded that the claimant was not disabled (Tr. 23).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a) and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must

explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

In this case, the ALJ thoroughly summarized the opinions from Dr. Plumlee and Dr. Doty, but failed to properly assess them for persuasiveness, supportability, and consistency, despite using those terms in his opinion. This was error because the regulations discussed above require the ALJ to explain how persuasive she found the medical opinions she considered, and as part of that explanation, also require her to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2). As to Dr. Doty, the ALJ failed to apply the supportability and consistency factors at all, instead rejecting his opinion because he used the term "moderate" and the ALJ found it to be "unclear" (Tr. 20). This is not a substantive analysis. As to Dr. Plumlee's opinion, the ALJ likewise failed to perform a proper substantive analysis as to supportability and consistency, rejecting Dr. Plumlee's opinion because the claimant had a normal gait and grip strength, despite the fact that Dr. Plumlee's assessed limitations for the claimant largely related to her dizziness, fatigue, and being a fall risk, for which he cited her multiple hospitalizations and documented impairments. It was error for the ALJ to "pick and choose" her way through the evidence in this record in order to avoid finding the claimant disabled. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)

(noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

Because the ALJ failed to properly evaluate the opinions of Dr. Doty and Dr. Plumlee, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of all the evidence in the record. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**